## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| MITCHELL JAMES DUNN, JOSIAH JEFFREY BURNHAM, JEREMY RONALD HESSON, 2nd AMENDMENT ARMORY, and the NATIONAL RIFLE ASSOCIATION OF AMERICA, <br><br> Plaintiffs, <br><br> v. <br><br> MARK GLASS, in his official capacity as Commissioner of the Florida Department of Law Enforcement, JAMES UTHMEIER, in his official capacity as Attorney General of the State of Florida, MELISSA WILLIAMSON NELSON, in her official capacity as State Attorney for the 4th Judicial Circuit, BRIAN STUART KRAMER, in his official capacity as State Attorney for the 8th Judicial Circuit, and SUSAN SHORTER LOPEZ, in her official capacity as State Attorney for the 13th Judicial Circuit, <br><br> Defendants. | No. |

## **COMPLAINT**

Plaintiffs Mitchell James Dunn, Josiah Jeffrey Burnham, Jeremy Ronald Hesson, 2nd Amendment Armory, and National Rifle Association of America ("NRA") submit the following Complaint.

1

## INTRODUCTION

This action challenges the constitutionality of both Florida Statute § 790.0655 and Article I, section 8(b) of the Florida Constitution (hereinafter referred to collectively as the "Cooling-off Waiting Period Provisions"). Article I, section 8(b) of the Florida Constitution, which was added to the Florida Constitution in 1998 as Amendment 12, imposes a mandatory three-day waiting period between the purchase and delivery at retail of any handgun.[1] The only exceptions to this restriction are for holders of a concealed weapons permit and for those conducting a trade-in of another handgun. Violation of this constitutional provision may result in felony prosecution of either the retailer, the purchaser, or both.

Florida Statute § 790.0655, which was enacted by the Legislature of the State of Florida and signed into law by Governor Rick Scott on March 9, 2018, expanded the mandatory waiting period required for handguns under Article I, section 8(b) of the Florida Constitution to include all firearms—not merely handguns.[2] With limited exceptions, Florida Statute § 790.0655 makes it unlawful for any person who sells a firearm to deliver the purchaser's property to them until a minimum of three days after the seller has initiated a background check, even if a clean background check

---

[1] Article I, section 8(b) of the Florida Constitution is attached to this filing as Exhibit A.

[2] Florida Statute § 790.0655 is attached to this filing as Exhibit B.

comes back immediately.[3] *Id.* at Section (1)(a). Violation of this Act could result in criminal charges being filed against both the seller and the purchaser of the firearm.

These Cooling-off Waiting Period Provisions are distinct from those waiting periods that exist solely to afford sufficient time to conduct a background check. Indeed, Florida's firearm waiting periods are completely unrelated to the time it takes to complete a background check—even if the background check comes back clean instantly, the purchaser still must wait three days. Instead, these provisions exist simply to impose an arbitrary delay and a forced period of reflection between purchase and delivery of a firearm—in essence, a "cooling-off" period.

Because both of the Cooling-off Waiting Period Provisions burden the right to keep and bear arms, and because the government could never meet its burden to establish a historical tradition of regulation that justifies them, they are unconstitutional under the Second Amendment to the United States Constitution, as made applicable to the states by the Fourteenth Amendment.

---

[3] The provisions of Fla. Stat. § 790.0655 do not apply to: (1) a buyer who is the holder of a concealed firearms license under Florida law, (2) a trade-in of another firearm, (3) the purchase of a rifle or shotgun if the person has successfully completed a minimum of 16 hours in a hunter safety course and possesses a hunter safety certification card, (4) a buyer of a rifle or shotgun who is exempt from the hunter safety course requirements and holds a valid Florida hunting license, (5) purchase of a rifle or shotgun by a law enforcement officer or correctional officer, or servicemember.

## PARTIES

1.  Plaintiff Mitchell James Dunn is an adult resident of Florida who has had his
Second Amendment-protected right to keep and bear arms infringed upon by the
Cooling-off Waiting Period Provisions. *See* Declaration of Mitchell James Dunn,
Exhibit C ("Dunn Dec."). On August 25, 2025, Mr. Dunn went to Sentry Firearms
in Jacksonville, Florida, for the purpose of acquiring a Colt Gold Cup National
Match 1911 handgun. *Id.* at ¶8. Mr. Dunn provided the information required for a
federal background check. *Id.* at ¶9. He passed the background check and
subsequently paid the purchase price for his firearm. *Id.* at ¶¶9 and 10. During the
course of the transaction, the Sentry Firearms employee who had been helping Mr.
Dunn informed him that he would not be able to take possession of the firearm until
August 29, 2025. *Id.* at ¶11. When Mr. Dunn asked why, the Sentry Firearms
employee responded that it was due to Florida's waiting period laws. *Id*. When Mr.
Dunn asked if there was any reason other than the requirements of the firearm
waiting period laws why he could not receive the firearm and take it home with him,
the Sentry Firearms employee responded that there were no other reasons. *Id. at ¶12*.
In addition to this purchase, Mr. Dunn actively seeks to expand his ability to keep
and bear arms through future firearms purchases. *Id.* at ¶13. Accordingly, even if Mr.
Dunn receives possession of the Colt Gold Cup National Match 1911 handgun while
this action is pending, this matter will not be moot. Mr. Dunn will purchase another

firearm, and when he does, he will be subjected to the same unconstitutional burden. This suit therefore satisfies one of the exceptions to the mootness doctrine. *See FCC v. Consumers' Research*, 606 U.S. —, 145 S. Ct. 2482, 2496 n.1 (2025) (only requiring mere reasonable expectation of future similar occurrence). Mr. Dunn is a member of the National Rifle Association of America. Dunn Dec. at ¶5.

2.      Plaintiff Josiah Jeffrey Burnham is an adult resident of Florida who is also negatively impacted by the Cooling-off Waiting Period Provisions. *See* Declaration of Josiah Jeffrey Burnham, Exhibit D ("Burnham Dec."). On August 23, 2025, Mr. Burnham went to Pickett Weaponry Services Inc. in Newberry, Florida, for the purpose of acquiring a Mossberg Model 88 Shotgun. *Id.* at ¶7. Mr. Burnham provided the information required for a federal background check. *Id.* at ¶8. He passed the background check and paid the purchase price for the firearm. *Id.* at ¶¶8 and 9. At this point, Mr. Burnham requested to take possession of the firearm that he had purchased so that he could remove it from the store and transport it to his residence. *Id.* at ¶9. The Pickett Weaponry employee who had been helping Mr. Burnham with this transaction responded that, due to the mandatory waiting period imposed by the Cooling-off Waiting Period Provisions, the purchased firearm had to remain in the custody of Pickett Weaponry for the next three days. *Id.* Mr. Burnham then asked the Pickett Weaponry employee if there was any reason other than the requirements of the Cooling-off Waiting Period Provisions why he could not obtain

the firearm and take it with him. The Pickett Weaponry employee said there was none. *Id.* at ¶10. The Cooling-off Waiting Period Provisions' requirements were the only reason Pickett Weaponry could not deliver the firearm to Mr. Burnham. In addition to this purchase, Mr. Burnham actively seeks to expand his ability to keep and bear arms through future firearms purchases in the State of Florida. *Id.* at ¶6. Accordingly, even if Mr. Burnham receives possession of the Mossberg Model 88 Shotgun while this action is pending, this matter will not be moot. Mr. Burnham will purchase another firearm in the future and when he does, he will be subjected to the same unconstitutional burden. This suit therefore satisfies one of the exceptions to the mootness doctrine. *See FCC*, 145 S. Ct. at 2496 n.1 (only requiring mere reasonable expectation of future similar occurrence). Mr. Burnham is a member of the National Rifle Association of America. Burnham Dec. at ¶5.

3.   Plaintiff Jeremy Ronald Hesson is an adult resident of Florida who is also negatively impacted by the Cooling-off Waiting Period Provisions. *See* Declaration of Jeremy Ronald Hesson, Exhibit E ("Hesson Dec."). On August 23, 2025, Mr. Hesson went to Shoot Straight Shooting Range and Gun Store in Casselberry, Florida, for the purpose of acquiring a Ruger GP100 .357 Magnum Revolver. *Id.* at ¶8. Mr. Hesson provided the information required for a federal background check. *Id.* at ¶9. He passed the background check and paid the purchase price for the firearm. *Id.* at ¶¶9 and 10. At this point, Mr. Hesson requested to take possession of

the firearm that he had purchased so that he could remove it from the store and transport it to his residence. *Id.* at ¶10. The Shoot Straight employee who had been helping Mr. Hesson with this transaction responded that, due to the mandatory waiting period imposed by the Cooling-off Waiting Period Provisions, the purchased firearm had to remain in the custody of Shoot Straight for the next three days. *Id.* Mr. Hesson then asked the Shoot Straight employee if there was any reason other than the requirements of the Cooling-off Waiting Period Provisions why he could not obtain the firearm and take it with him. The Shoot Straight employee said there was none. *Id.* at ¶11. The Cooling-off Waiting Period Provisions' requirements were the only reason Shoot Straight could not deliver the firearm to Mr. Hesson. In addition to this purchase, Mr. Hesson actively seeks to expand his ability to keep and bear arms through future firearms purchases in the State of Florida. *Id.* at ¶6. Accordingly, even if Mr. Hesson receives possession of the Ruger GP100 .357 Magnum Revolver while this action is pending, this matter will not be moot. Mr. Hesson will purchase another firearm in the future and when he does, he will be subjected to the same unconstitutional burden. This suit therefore satisfies one of the exceptions to the mootness doctrine. *See FCC*, 145 S. Ct. at 2496 n.1 (only requiring mere reasonable expectation of future similar occurrence). Mr. Hesson is a member of the National Rifle Association of America. Hesson Dec. at ¶12.

4.    Plaintiff 2nd Amendment Armory is a firearms-related retail business operating in Brandon, Florida. *See* Declaration of Ted W. Martin—Owner of 2nd Amendment Armory, Exhibit F ("Martin Dec."). 2nd Amendment Armory specializes in providing tactical supplies and firearms to law-abiding citizens. *Id.* at ¶3. Its staff assist their customers not only with firearm related retail purchases, but also by promoting responsible firearm handling and ownership through their firearm training classes. *Id.* 2nd Amendment Armory is a federal firearms licensed dealer ("FFL"). *Id.* at ¶4. The waiting period laws have impacted 2nd Amendment Armory's sales of firearms and firearm related equipment, and in so doing have impacted the company's annual revenue. *Id.* at ¶6a. In addition to the loss of revenue, 2nd Amendment Armory's employees and agents face the prospect of investigation, arrest, and felony-level prosecution if they deviate from the requirements of the Cooling-off Waiting Period Provisions in any way. *Id.* at ¶6b. The Cooling-off Waiting Period Provisions have also harmed 2nd Amendment Armory's past, present, and future customers by preventing those in immediate need of a firearm for self-defense from acquiring one. *Id.* at ¶7. 2nd Amendment Armory maintains standing by representing the interests of its present and future customers, as well as through the continued economic harm it suffers as a result of the Cooling-off Waiting Period Provisions. 2nd Amendment Armory is a corporate member of the NRA Business Alliance. *Id.* at ¶8.

5.    Plaintiff National Rifle Association of America ("NRA") is a nonprofit corporation organized under the laws of the State of New York with its principal place of business in Fairfax, Virginia. The NRA is America's oldest civil rights organization and is widely recognized as America's largest and foremost defender of Second Amendment rights. The NRA was founded in 1871 by Union veterans—a general and a colonel—who, based on their experiences in the Civil War, sought to promote firearms marksmanship and expertise among the citizenry. Today the NRA is a traditional membership association and America's leading provider of firearms marksmanship and safety training for civilians and law-enforcement alike. NRA has millions of members across the nation, including in Florida. NRA brings this action on behalf of its members, including Mitchell James Dunn, Josiah Jeffrey Burnham, Jeremy Ronald Hesson, and 2nd Amendment Armory, who are adversely and directly harmed by Defendants' enforcement of the laws, provisions, regulations, policies, practices, and customs challenged herein.

6.    Defendant Mark Glass is the Commissioner and Executive Director of the Florida Department of Law Enforcement. This action is brought against him in his individual and official capacities. As Commissioner, he oversees all safety and security efforts in the executive branch of Florida.

7.    Defendant James Uthmeier is the Attorney General of the State of Florida. This action is brought against him in his individual and official capacities, to the

extent that relief against the Cooling-off Waiting Period Provisions must include the Attorney General as a party to this matter. Pursuant to Article IV, section 8(b) of the Florida Constitution, as the Attorney General for the State of Florida, Defendant Uthmeier is the chief state legal officer whose duty is to ensure that the laws of the State are uniformly and adequately enforced.

8.     Defendant Melissa Williamson Nelson is the State Attorney for the 4th Judicial Circuit. This action is brought against her in her individual and official capacities. As the elected State Attorney for the 4th Judicial Circuit, she is tasked with prosecuting individuals who commit crimes against the State of Florida, including violations of the Cooling-off Waiting Period Provisions, in the counties making up the 4th Judicial Circuit. The State Attorney's enforcement of the Cooling-off Waiting Period Provisions across the 4th Judicial Circuit places Plaintiffs under imminent threat of arrest and prosecution should they violate one or more of the Cooling-off Waiting Period Provisions. The State Attorney maintains an office in Duval County at 311 West Monroe Street in Jacksonville, Florida.

9.     Defendant Brian Stuart Kramer is the State Attorney for the 8th Judicial Circuit of Florida. This action is brought against him in his individual and official capacities. As the elected State Attorney for the 8th Judicial Circuit, he is tasked with prosecuting individuals who commit crimes against the State of Florida, including violations of the Cooling-off Waiting Period Provisions, in the counties making up

10

the 8th Judicial Circuit. The State Attorney's enforcement of the Cooling-off Waiting Period Provisions across the 8th Judicial Circuit places Plaintiffs under imminent threat of arrest and prosecution should they violate one or more of the Cooling-off Waiting Period Provisions. The State Attorney maintains an office in Alachua County at 120 West University Avenue in Gainesville, Florida.

10.　　Defendant Susan Shorter Lopez is the State Attorney for the 13th Judicial Circuit. This action is brought against her in her individual and official capacities. As the elected State Attorney for the 13th Judicial Circuit, she is tasked with prosecuting individuals who commit crimes against the State of Florida, including violations of the Cooling-off Waiting Period Provisions, in the counties making up the 13th Judicial Circuit. The State Attorney's enforcement of the Cooling-off Waiting Period Provisions across the 13th Judicial Circuit places Plaintiffs under imminent threat of arrest and prosecution should they violate one or more of the Cooling-off Waiting Period Provisions. The State Attorney maintains an office in Hillsborough County at 419 N. Pierce Street in Tampa, Florida.

11.　　Defendants are enforcing or will enforce the unconstitutional provisions of the Cooling-off Waiting Period Provisions against Plaintiffs under color of state law, within the meaning of 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

12.     The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983, since this action seeks to redress the deprivation, under color of the laws, ordinances, regulations, customs and usages of the State, of rights, privileges, or immunities secured by the United States Constitution.

13.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively, and their claim for attorneys' fees is authorized by 42 U.S.C. § 1988.

14.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## GENERAL ALLEGATIONS

15.     The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." U.S. Const. amend. II; *see also District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010); and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).

16.    In *Heller*, the United States Supreme Court firmly rejected the erroneous notion that the Second Amendment protects only the communal right of a state to maintain an organized militia. 554 U.S. at 580-81. Instead, the Supreme Court affirmed that the Second Amendment protects an *individual's* natural right to keep and bear arms for self-defense and the defense of others. *Id.* at 592.

17.    In *McDonald,* the Court held that the right to keep and bear arms recognized in the Second Amendment is made applicable to the states by the Fourteenth Amendment. 561 U.S. at 777.

18.    And then in *Bruen*, the Supreme Court put an end to the practice that many lower courts had used when considering the constitutionality of firearms-related regulations—an "interest-balancing test" that elevated the policy preferences of the government over the intent of the Founders. Instead, the Court established a new standard for courts to use: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and "[t]he government must … justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. The Court went on to explain that "[o]nly if a firearm regulation is consistent with this nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 17 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

19.     The Court's decisions in *Heller*, *McDonald*, and *Bruen* clearly establish the principle that if a member of "the people" wishes to "keep" or "bear" an "arm," then the ability to do so "shall not be infringed," and a regulation which restricts that conduct in any way is unconstitutional absent historical analogues that demonstrate that the Founders never considered such conduct to be protected in the first place.

20.     The individual Plaintiffs in this case desire to obtain possession of firearms that they have purchased for lawful purposes—including self-defense. The Cooling-off Waiting Period Provisions prohibit the individual Plaintiffs from doing so without being subjected to an arbitrary, unnecessary, burdensome, and useless three-day delay.

21.     Similarly, Plaintiff 2nd Amendment Armory desires to sell and provide firearms without arbitrary delay to those current and future customers who have passed their background checks. The Cooling-off Waiting Period Provisions prohibit Plaintiff 2nd Amendment Armory from doing so without risking criminal sanctions. Moreover, the Cooling-off Waiting Period Provisions discourage those with an immediate need of a firearm for self-defense from acquiring one through FFL dealerships like Plaintiff 2nd Amendment Armory. This, in turn, drives down revenue for Plaintiff 2nd Amendment Armory and other FFL dealerships throughout Florida.

22.    Plaintiff NRA represents the interests of its members who are being irreparably harmed by the Cooling-off Waiting Period Provisions. Included in this membership group are individual plaintiffs Dunn, Burnham, and Hesson, as well as Plaintiff 2nd Amendment Armory. Defendants' continued enforcement of the Cooling-off Waiting Period Provisions harms Plaintiff NRA's members by denying their exercise of the constitutionally protected right to keep and bear arms.

23.    The right to "keep" arms necessarily implies the right to possess arms one has acquired. After all, "keep" means to possess or "have weapons." *Heller*, 554 U.S. 570, 582 (2008). By the Cooling-off Waiting Period Provisions' very terms, they prevent individuals from taking possession of their firearms. Specifically, Article I, section 8(b) of the Florida Constitution states in relevant part:

> (b) There shall be *a mandatory period of three days, excluding weekends and legal holidays, between the purchase and delivery at retail of any handgun. For the purposes of this section, "purchase" means the transfer of money or other valuable consideration to the retailer, and "handgun" means a firearm capable of being carried and used by one hand, such as a pistol or revolver. Holders of a concealed weapon permit as prescribed in Florida law shall not be subject to the provisions of this paragraph.*

> (c) The Legislature *shall enact legislation implementing subsection (b) of this section, effective no later than December 31, 1991, which shall provide that anyone violating the provisions of subsection (b) shall be guilty of a felony.*

> (d) *This restriction shall not apply to a trade-in of another handgun.*

And Fla. Stat. § 790.0655 states in relevant part:

> (1)(a) A mandatory waiting period is imposed between the purchase and delivery of a firearm. The mandatory waiting period is 3 days, excluding weekends and legal holidays, or expires upon the completion of the records checks required under § 790.065, whichever occurs later. "Purchase" means the transfer of money or other valuable consideration to the retailer. "Retailer" means and includes a licensed importer, licensed manufacturer, or licensed dealer engaged in the business of making firearms sales at retail or for distribution, or use, or consumption, or storage to be used or consumed in this state, as defined in § 212.02(13).

24.    Therefore, because the Cooling-off Waiting Period Provisions prevent individuals from possessing bearable arms for a period of three days—conduct that "the Constitution *presumptively* protects," the plain text of the Second Amendment is implicated. *Bruen*, 597 U.S. at 24 (emphasis added). Plaintiffs have met their burden under *Bruen*, and the Cooling-off Waiting Period Provisions are presumptively unconstitutional.

25.    Moreover, the Cooling-off Waiting Period Provisions are not commercial regulations, such that they are directed at ensuring that sellers of firearms comply with the law. Indeed, the very purpose of the law is to limit the ability of a *purchaser* to obtain a firearm.

26.    The fact that the Cooling-off Waiting Period Provisions contain exceptions for holders of a concealed weapons permit, for the trade-in of another firearm, for the purchase of a rifle or shotgun by a law enforcement officer, or by those who have

16

completed a hunter safety course, demonstrates that there are some classes of purchasers for which Florida does not think a three-day waiting period is necessary. If the Cooling-off Waiting Period Provisions were a true commercial regulation, it would not maintain exceptions based on the category of purchaser.

27.    Since the Second Amendment presumptively protects Plaintiffs' conduct, the State must justify the Cooling-off Waiting Period Provisions by demonstrating that they are consistent with the Nation's historical tradition of firearm regulation.

28.    It is impossible for the State to meet this burden, because there is no historical tradition of firearms being regulated in this manner, either at the time of our Founding and the ratification of the Second Amendment, or during the Reconstruction era and the ratification of the Fourteenth Amendment.

29.    In fact, the first waiting period law was not enacted until 1923, and involved a one-day waiting period for handgun sales in California to provide more time for background checks to be conducted (a process which is nearly instantaneous today). *See* Professor David B. Kopel's Written Testimony on Colorado House Bill 23-1219, To Delay the Acquisition of Firearms.[4] Under *Bruen*, analogies from the 1920s are far too late to offer a historical analogue to the issue of waiting periods. *Bruen*, 597 U.S. at 66 & n.28. Moreover, it was not until the last decade of the 20th Century that

---

[4] https://davekopel.org/Testimony/HB23-1219%20Kopel%20testimony%20on%20forced%20delays%20in%20gun%20acquisition-Mar6.pdf

a state implemented a waiting period that required the buyer of a firearm to wait longer than was necessary to conduct a background check before taking possession of their firearm. *Ortega v. Grisham*, -- F.4th --, 2025 WL 2394646 at *11 (10th Cir. Aug. 19, 2025).

30.    Even the 1923 waiting period law in California was not a "cooling off" waiting period, and thus would fail the "why" test contained in *Bruen*, with respect to analogizing to "why" an historical law was enacted.

31.    In summary, the plain text of the Second Amendment covers Plaintiffs' conduct. Therefore, the Cooling-off Waiting Period Provisions are presumptively unconstitutional. The State is unable to rebut this presumption because the Act is not consistent with this Nation's historical tradition of firearm regulation. Therefore, Florida's Cooling-off Waiting Period Provisions are unconstitutional.

**FIRST CLAIM FOR RELIEF**
**Right to Keep and Bear Arms**
**U.S. Const., amends. II and XIV**

**Declaratory Relief**

32.    Paragraphs 1-31 are realleged and incorporated by reference.

33.    Both Cooling-off Waiting Period Provisions implicate the text of the Second Amendment because they cover the acquisition and possession of a firearm, which is arms-bearing conduct.

34.    The Cooling-off Waiting Period Provisions burden the right of residents of the State of Florida, including Plaintiffs, to exercise their right to keep and bear arms, a right that is explicitly protected by the Second Amendment.

35.    The Cooling-off Waiting Period Provisions also burden the right of firearms-related retail businesses, including Plaintiff 2nd Amendment Armory, to operate in the State of Florida, and further burden the right of their current and future customers to exercise their right to keep and bear arms.

36.    There are significant criminal sanctions for both retailers and purchasers for violation of these unconstitutional laws.

37.    These restrictions infringe Plaintiffs' rights guaranteed by the Second Amendment, which is applicable to Florida through the Fourteenth Amendment.

38.    The Cooling-off Waiting Period Provisions' prohibitions arbitrarily delay the right of law-abiding citizens to obtain and possess arms even if they immediately pass all required background checks, and even if they desire to obtain an arm for the purpose of self-defense in the home, where Second Amendment protections are at their zenith.

39.    The Cooling-off Waiting Period Provisions contain no exception for exigent circumstances, imminent threat of bodily harm, or for situations where a purchaser has already obtained a domestic order against a former partner and has actual knowledge that the partner owns a firearm.

40.    The State cannot meet its burden because it could never demonstrate that the Cooling-off Waiting Period Provisions are consistent with this Nation's historical tradition of firearm regulation.

41.    Plaintiffs are part of "the people" whom the Second Amendment was designed to protect.

42.    Plaintiffs satisfy the prerequisites for entering declaratory relief.

43.    Declaratory relief—including relief that extends to the Individual Plaintiffs, Plaintiff NRA's present and future members, and Plaintiff 2nd Amendment Armory's present and future customers—is necessary to provide complete relief to Plaintiffs.

44.    A ruling in favor of declaratory relief would also necessarily invalidate individual county ordinances and other local laws that impose additional firearm waiting period requirements on top of those required by the Cooling-off Waiting Period Provisions.[5]

---

[5] For example, Hillsborough County Ordinance No. 18-13, § 3 extends the state mandated three-day waiting period to a total of five business days for firearm sales conducted in the county. "Except as provided in Sections 36-85 and 36-86, there shall be a mandatory five-day waiting period, which shall be five days excluding weekends and legal holidays, between the hour of sale and the hour of delivery of any firearm. No seller shall deliver any firearm to any person that is not a licensed firearm dealer, importer, or manufacturer and no buyer that is not a licensed firearm dealer, importer, or manufacturer shall take delivery of any firearm unless 120 hours have elapsed between the time of sale and the time of delivery of the firearm." *Id.*

**SECOND CLAIM FOR RELIF**
**Right to Keep and Bear Arms**
**U.S. Const., amends. II and XIV**

**Injunctive Relief**

45.    Paragraphs 1-44 are realleged and incorporated by reference.

46.    Plaintiffs have established that their Second Amendment rights have been violated because both Cooling-off Waiting Period Provisions implicate the text of the Second Amendment as they cover acquisition and possession of a firearm, and the Individual Plaintiffs are unable to acquire and possess the firearm they already paid for during the duration of the Waiting Period.

47.    The Provisions therefore have a presumption of unconstitutionality that the Government must justify with a relevantly similar historical analogue from the time of the Founding.

48.    The Cooling-off Waiting Period Provisions have no relevantly similar historical analogue from the time of the Founding for the purposes of the Second Amendment analysis under *Bruen* because similar laws delaying acquisition of a firearm, subsequent to their purchase, simply did not exist during the Founding era.

49.    There is no adequate remedy at law for the violation of Plaintiffs' Second Amendment-protected rights because the deprivation of their Second Amendment-protected rights to keep and bear arms will occur with every purchase of any firearm within the State of Florida.

50.    Plaintiffs have suffered and will continue to suffer irreparable harm because each time Plaintiffs purchase a firearm, they will be subject to the same delay in acquiring that firearm.

51.    Injunctive relief—including relief that extends to the Individual Plaintiffs, Plaintiff NRA's present and future members, and Plaintiff 2nd Amendment Armory's present and future customers—is necessary to provide complete relief to Plaintiffs.

52.    A ruling in favor of injunctive relief would also necessarily invalidate individual county ordinances and other local laws that impose additional firearm waiting period requirements on top of those required by the Cooling-off Waiting Period Provisions.

### THIRD CLAIM FOR RELIEF
### Right to Keep and Bear Arms
### U.S. Const., amends. II and XIV

### Damages

53.    Paragraphs 1-52 are realleged and incorporated by reference.

54.    Defendants are sued in their individual as well as official capacities.

55.    Plaintiffs may obtain damages under 42 U.S.C. § 1983 for violations of the Constitution by state officials acting under color of state law.

56.    Plaintiffs' claims for damages are not precluded by any Qualified Immunity defense, for two reasons:

i.   Plaintiffs preserve the argument that the Qualified Immunity doctrine is not applicable to constitutional deprivations that do not include split-second decision making by relevant government actors.

ii.  Clearly established law—*inter alia*, *Heller*, *McDonald*, and *Bruen*—applies in this context, such that the Qualified Immunity doctrine is satisfied, and Plaintiffs are entitled to damages.

57.   Plaintiffs are entitled to damages under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

Plaintiffs pray that the Court:

58.   Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 that the Cooling-off Waiting Period Provisions violate the Second Amendment both on their face and as applied to law-abiding citizens purchasing a firearm for self-defense who pass a background check in less than three days;

59.   Enter permanent injunctive relief enjoining Commissioner Mark Glass, Attorney General James Uthmeier, State Attorney Melissa Williamson Nelson, State Attorney Brian Stuart Kramer, State Attorney Susan Shorter Lopez, and all of their officers, agents, and employees, from enforcing the Cooling-off Waiting Period Provisions;

60.   Award remedies to the Individual Plaintiffs, Plaintiff NRA's present and future members, and 2nd Amendment Armory—including its present and future

customers—available under 43 U.S.C. § 1983, and all reasonable attorney fees, costs, and expenses of suit pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54;

61.    Enter an award of actual and nominal damages;

62.    Order such other and further relief as the Court may deem just, proper, and necessary under the circumstances.

## JURY DEMAND

Plaintiffs invoke their right to jury, subject to any potential agreement between the parties to request a bench trial.

DATED: August 25, 2025                     Respectfully submitted,

/s/ Matthew M. Larosiere
Matthew M. Larosiere
6964 Houlton Cir.
Lake Worth, FL 33467
Phone: (561) 452-7575
Email: larosieremm@gmail.com
*Lead Counsel for Plaintiffs*

Michael D. McCoy*
William E. Trachman*
**Mountain States Legal Foundation**
2596 South Lewis Way
Lakewood, Colorado 80227
Phone: (303) 292-2021
Email: mmccoy@mslegal.org
Email: wtrachman@mslegal.org
*Attorneys for Plaintiffs*

Joseph G.S. Greenlee*
Erin M. Erhardt*
**NRA – Institute for Legislative Action**
11250 Waples Mill Road
Fairfax, VA 22030
Phone: (703) 267-1161
Email: jgreenlee@nrahq.org
Email: eerhardt@nrahq.org

*Attorneys for Plaintiff National Rifle Association of America*

*Pro Hac Vice Applications to be filed.*