**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| MITCHELL JAMES DUNN, *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>MARK GLASS, *et al.*,<br><br>Defendants. | No. 8:25-cv-02264-SDM-AEP |
|---|---|

## PLAINTIFFS' RESPONSE TO THE COURT'S ORDER OF SEPTEMBER 9, 2026 (DOC. 47)

The Court has directed the parties to explain why this action should not be dismissed for the reasons discussed in *United States v. Johnson*, 319 U.S. 302 (1943). Doc. 47 at 4. The answer, in short, is that this case has every attribute *Johnson* found missing and none of the attributes *Johnson* found disqualifying.[1]

Plaintiffs are Florida residents who paid for firearms and were refused delivery because of the laws they challenge, Florida retailers who must refuse that delivery because the alternative is a felony charge, and an organization whose members are subject to those same restrictions. Without consulting Defendants, they retained their own counsel, bore their own expense, and sued the state officers

[1]The Court's order directs "the parties" to respond. Plaintiffs file this paper on their own behalf. Plaintiffs understand that Defendants will respond separately, and Plaintiffs do not purport to speak to Defendants' internal deliberations.

charged with enforcing those laws. Those officers appeared, answered, and contested Plaintiffs' allegations, and continue to enforce the waiting period across Florida today. Nothing about that controversy has changed. What changed is Defendants' assessment of their litigation risk after the Tenth Circuit's decision in *Ortega v. Grisham*, 148 F.4th 1134 (10th Cir. 2025), and their resulting decision to make an offer of judgment under Rule 68. A defendant's choice to concede rather than fight does not transform an adversary proceeding into a collusive one. As the Supreme Court explained, "it would be a curious result if, in the administration of justice, a person could be denied access to the courts because the Attorney General . . . agreed with the legal arguments asserted by the individual." *INS v. Chadha*, 462 U.S. 919, 939 (1983).

## BACKGROUND

### I. The challenged laws and Plaintiffs' injuries.

Article I, section 8(b) of the Florida Constitution imposes a mandatory three-day waiting period between the retail purchase and delivery of any handgun, and section 8(c) directs the Legislature to make a violation of 8(b) a felony. Section 790.0655, Florida Statutes, extends that waiting period to all firearms and makes it a third-degree felony for a retailer or its employee to deliver a firearm before the period expires. Fla. Stat. § 790.0655(1)(a), (3)(a). Article VIII, section 5(b) of the Florida Constitution separately authorizes each county to impose a waiting period of

three to five days on firearm sales within the county, and several counties have done so. Doc. 21 ¶ 45 & n.6. Defendants admit that the three-day period "exceeds the time typically required to perform a background check." Doc. 26 at 4.

The individual Plaintiffs were each directly burdened by the law's operation. Mitchell Dunn passed a background check, paid for a Colt 1911 at a Jacksonville retailer, and was told he could not take it home for four days solely because of Florida's waiting period. Doc. 21 ¶ 1; Doc. 1-4 (Dunn Decl.) ¶¶ 8–12. Josiah Burnham and Jeremy Hesson had the same experience at retailers in Newberry and Casselberry. Doc. 21 ¶¶ 2–3; Doc. 1-5 (Burnham Decl.) ¶¶ 7–10; Doc. 1-6 (Hesson Decl.) ¶¶ 8–11. Mauricio Figueroa was refused delivery of a pistol in Winter Haven in March 2026, seven months after this suit was filed. Doc. 21 ¶ 4. He was similarly refused delivery of a rifle in Lake Hamilton just two short weeks ago.[2] Each individual Plaintiff intends to purchase firearms in the future and will be subject to the same delay when they do. Doc. 21 ¶¶ 1–4.

The retailer Plaintiffs, 2nd Amendment Armory and Centurion Armament Co., are federally licensed dealers whose employees face felony prosecution if they deliver a purchased firearm before the expiration of the waiting period, and whose sales suffer as a result. Doc. 21 ¶¶ 5–7; Doc. 1-7 ¶¶ 6–7. The National Rifle

[2] On September 5, 2026, Mauricio Figueroa purchased a Bergara 300 Winchester Magnum Sniper Bolt Action Rifle but was denied possession of it until September 14, 2026, due to the waiting period law. Ex. C – Figueora Declaration ¶¶5-8.

Association of America sues on behalf of members in each of Florida's twenty judicial circuits, including the individual and retailer Plaintiffs. Doc. 21 ¶¶ 8, 23.

## II. Plaintiffs sued, Defendants answered, and Defendants—not Plaintiffs—initiated settlement.

Plaintiffs filed this action on August 25, 2025, against the Commissioner of the Florida Department of Law Enforcement, the Attorney General, and three State Attorneys. Doc. 1. On March 20, 2026, Plaintiffs amended the complaint to add all twenty of Florida's State Attorneys, so that any judgment would run against every officer with authority to prosecute a violation. Doc. 21 ¶ 11. The five originally named Defendants answered on April 27, 2026, and the remaining State Attorneys answered on May 15, 2026. Docs. 26, 44. Defendants' answers contested the complaint. *Id*.

In their Answers, Defendants admitted the facts that matter most for this inquiry: that the State Attorneys prosecute violations of the waiting period, that the Attorney General defends those convictions on appeal, that the Department of Law Enforcement investigates complaints of violations, and that the individual Plaintiffs must wait three days to take delivery while the retailer Plaintiffs risk criminal penalties if they deliver sooner. *Id.* ¶¶ 12, 21–22, 37. Except for providing notice of the forthcoming lawsuit, Plaintiffs had no contact with any Defendant in this action, or with any counsel for any Defendant in this action, about the case before moving

forward with the filing of the suit. Ex. A (McCoy Dec.) ¶8, Ex. B (Larosiere Dec.) ¶3, Ex. F (Greenlee Dec.) ¶3.[3] Plaintiffs selected their own counsel, who have represented them throughout, and Plaintiffs have borne their own litigation expense.

On June 1, 2026—roughly nine months after the Tenth Circuit held New Mexico's seven-day waiting period unconstitutional in *Ortega*, five months after that court denied rehearing en banc, *Ortega v. Grisham*, 162 F.4th 1056 (10th Cir. 2025), and weeks after Defendants answered—counsel for Defendants wrote to Plaintiffs' counsel proposing an offer of judgment on behalf of all twenty-two Defendants under Rule 68 "[i]n the interest of conserving judicial and parties' resources," stating that Defendants would "agree to a judgment that includes statewide relief for Plaintiffs and reasonable attorney's fees." Ex. A ¶10, and Ex. A-1 (June 1, 2026, email correspondence – *Dunn v. Glass -- Offer of Judgment*). Plaintiffs' counsel did not solicit that proposal and it came as a complete surprise to them. *Id.* at ¶11. The parties engaged in back and forth on its form and content over the following days,[4] and on June 5, 2026, Defendants served a formal offer of judgment, signed by the Attorney General and the Solicitor General, which Plaintiffs accepted in writing and

[3]Declarations of counsel, individual Plaintiff Mauricio Figueroa, and of the retailer Plaintiffs are attached as Exhibits A through F.

[4]The offer as served and accepted is attached to the Notice of Acceptance. Doc. 45-1. The June 1 correspondence that preceded it, and the parties' exchanges over its terms, are described in the accompanying affidavit of counsel. Ex. A ¶¶10-12.

filed with the Court. Doc. 45; Doc. 45-1. In accepting, Plaintiffs gave up their claim for damages (Doc. 21, Third Claim for Relief)—a claim Defendants had contested, Doc. 26 ¶¶ 56, 58—and accepted $10,000 in fees and costs through the date of the offer, Doc. 45-1 § 4, a fraction of the fees incurred and a fraction of what 42 U.S.C. § 1988 would permit a prevailing party to seek. When the clerk had not entered judgment after more than three weeks, the parties jointly moved on June 30, 2026, for entry of final judgment. Doc. 46.

Throughout this period, and to the present day, Defendants have continued to enforce the waiting period. No Defendant has announced a policy of non-enforcement,[5] no retailer in Florida has been told it may deliver a firearm before the statutory period runs, and the retailer Plaintiffs continue to hold purchased firearms for three business days because the alternative is a felony charge. Ex. C (Figueroa Dec.) ¶¶8-9; Ex. D (Gay Dec.) ¶¶5-6; Ex. E (Monica Dec.) ¶¶5-6. Defendants' own offer confirms as much. It obligates Defendants to notify state agencies and law-enforcement personnel of "the cessation of the enforcement of the challenged law" only "[w]ithin seven days of the entry of the Court's Final Judg[]ment." Doc. 45-1

[5] On June 4, 2026, Defendant Brian Kramer, State Attorney for the Eighth Judicial Circuit, announced that he would not prosecute violations of Alachua County Ordinance 2018-18, which imposes a five-day waiting period on the retail sale of any firearm within the county. Defendant Kramer did not, however, announce a policy of non-enforcement as to the state's waiting period laws. https://alachuachronicle.com/state-attorney-notifies-alachua-county-he-will-no-longer-prosecute-violations-of-waiting-period-for-firearms/

§ 3; *accord* Doc. 46. Until the Court enters judgment, enforcement continues by the offer's own terms.

## ARGUMENT

### I. This action presents a genuine case or controversy.

Article III requires "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Evers v. Dwyer*, 358 U.S. 202, 204 (1958) (per curiam) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). That requirement has three components relevant here: an injury to the plaintiff, a defendant whose conduct causes it, and a judgment that would redress it. Each is present.

#### *A. Plaintiffs suffered concrete injury from Defendants' enforcement, and that enforcement continues.*

Each individual Plaintiff paid for a firearm and was refused delivery of his own property because of the challenged laws. Doc. 21 ¶¶ 1–4. The retailer Plaintiffs are subject to felony liability for early delivery. *Id.* ¶¶ 5–7. Those are textbook injuries in fact, and they recur with every purchase. *See id.* ¶¶ 50–51. Defendants admit as much: the individual Plaintiffs must wait three days to take delivery, and the retailer Plaintiffs risk criminal penalties if they deliver sooner. Doc. 26 ¶¶ 21–22, 37. The Supreme Court has held that a plaintiff who is subject to a statute's disabilities in his daily life "necessarily has . . . a substantial, immediate, and real

interest in the validity of the statute which imposes the disability," and that it is "not significant" that the plaintiff may have acted "for the purpose of instituting this litigation." *Evers*, 358 U.S. at 204. So too here. That Plaintiffs' counsel helped to build a justiciable record for appellate review is neither unusual nor disqualifying and makes the injury no less real.

Nor has the injury abated. Defendants have not stopped enforcing the waiting period, and they could not moot this case by promising to. A government defendant's "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice," *Bankshot Billiards, Inc. v. City of Ocala*, 634 F.3d 1340, 1344 (11th Cir. 2011) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)), and Defendants have not even gone that far. They continue to enforce the law. Doc. 26 ¶ 12; Doc. 45-1 § 3. That is precisely the posture in which the Supreme Court has repeatedly found Article III satisfied. *Friends of the Earth, Inc.*, 528 U.S. 189.

***B. Defendants' agreement with Plaintiffs' legal position does not eliminate Article III adverseness.***

The Court's order rests on the premise that "if both parties affirmatively desire the same result, no justiciable case is presented." Doc. 47 at 4 (quoting 13 Charles Alan Wright et al., *Federal Practice and Procedure* § 3530, at 690 (3d ed. 2008)). Whatever the force of that maxim in a case where nothing turns on the judgment, the

Supreme Court has squarely held that this principle does not apply where the defendant's ongoing conduct injures the plaintiff and the judgment would stop it.

In *Chadha*, the INS agreed with Chadha that the legislative-veto provision under which he was to be deported was unconstitutional, and the government urged the courts to say so. The Court nonetheless held that "prior to Congress' intervention, there was adequate Art. III adverseness even though the only parties were the INS and Chadha," because "the INS's agreement with Chadha's position does not alter the fact that the INS would have deported Chadha absent the Court of Appeals' judgment." 462 U.S. at 939; see also *id*. ("We have already held that the INS's agreement with the Court of Appeals' decision that [the statute] is unconstitutional does not affect that agency's 'aggrieved' status for purposes of appealing that decision[.]"). The controversy was concrete because the decision "will have real meaning: if we rule for Chadha, he will not be deported; if we uphold [the statute], the INS will execute its order and deport him." *Id.* (quoting *Chadha v. INS*, 634 F.2d 408, 419 (9th Cir. 1980)).

*United States v. Windsor* removes any doubt. 570 U.S. 744 (2013). There, the Executive agreed that the Defense of Marriage Act was unconstitutional, declined to defend it, and asked the courts to strike it—yet continued to enforce it by refusing Windsor's tax refund. The Court held that Article III was satisfied. "[T]he words of *Chadha* make clear its holding that the refusal of the Executive to provide the relief

sought suffices to preserve a justiciable dispute as required by Article III. In short, even where 'the Government largely agree[s] with the opposing party on the merits of the controversy,' there is sufficient adverseness and an 'adequate basis for jurisdiction in the fact that the Government intended to enforce the challenged law against that party.'" *Id.* at 758–59 (quoting *Chadha*, 462 U.S. at 940 n.12). The Court expressly distinguished this Article III inquiry from the "prudential" concern about adversarial presentation, which it addressed separately. *Id.* at 760–62.

Under *Chadha* and *Windsor*, the question is not whether Defendants agree with Plaintiffs about the Second Amendment. It is whether Defendants would enforce the waiting period against Plaintiffs absent a judgment. They would, and they are. As far as Plaintiffs are aware, every Florida retailer, including the two Plaintiff retailers, holds every purchased firearm for three business days because Defendants stand ready to prosecute if they do not. Doc. 26 ¶ 12. The judgment the parties have asked the Court to enter would end that—and, by Defendants' own undertaking, nothing other than judgment will. Doc. 45-1 § 3. That is a live controversy under Article III, whatever the parties' litigating positions.

### *C. Johnson and its predecessors condemn manufactured disputes, not settled ones.*

*Johnson* did not hold that parties who come to agree on the law lose access to the courts. It held that a suit is collusive when it "is not in any real sense adversary,"

which the Court found on facts that bear no resemblance to this record. 319 U.S. at 305. The landlord-defendant in *Johnson* had instigated the tenant's suit, arranged for the lawyer who nominally represented the tenant, and—as the record indicated—funded both sides of the litigation; the nominal plaintiff "ha[d] no active participation, over which he ha[d] exercised no control, and the expense of which he ha[d] not borne," and had never met the lawyer purportedly representing him. *Id.* at 304–05. The vice was that one party had "dominated the conduct of the suit by payment of the fees of both." *Id.* at 305. What was missing was the "honest and actual antagonistic assertion of rights," *id.*—an actual plaintiff with an actual grievance, asserted through counsel of his own choosing.

The earlier cases in the line are of a piece. In *Lord v. Veazie*, 49 U.S. (8 How.) 251 (1850), the parties manufactured a contract "for the purpose of instituting this suit," shared a "common interest opposed to that of other persons, who [were] not parties to this suit," and sought a judgment that would bind those absent third parties. *Id.* at 254–55. The Court was careful to distinguish that "feigned" case from a genuinely "amicable action," which "presupposes that there is a real dispute between the parties concerning some matter of right" and in which the parties merely agree not to "embarrass each other with unnecessary forms or technicalities." *Id.* at 255. In *Chicago & Grand Trunk Railway v. Wellman*, 143 U.S. 339 (1892), a passenger demanded a ticket on the very day a rate statute took effect, sued the railroad, and

the case was rushed to judgment within two months on an "agreed statement which precludes inquiry into many things which necessarily largely enter into the determination of the matter in controversy." *Id.* at 345. And in *Moore v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 47 (1971) (per curiam), the Court dismissed an appeal in which both parties sought the same holding—that a state anti-busing statute was constitutional—and neither party sought to restrain any state officer from enforcing the statute. *Id.* at 47–48.

None of those features are present here. No Defendant instigated this suit, drafted the complaint, chose Plaintiffs' counsel, or paid Plaintiffs' expenses. *Compare Lindsey v. Fayette Cnty. Bd. of Comm'rs*, 542 F. App'x 747, 749–50 (11th Cir. 2013) (Jordan, J., concurring) (identifying as "troubling indications" of collusion that defense counsel drafted the complaint for the plaintiff and the county considered paying a third party to sue it). Aside from notices that the case would be filed, Plaintiffs had no contact with any Defendant before suing. Defendants answered, and their answers contested Plaintiffs' account of the law, denied damages, and asserted that the waiting period is a commercial regulation. Doc. 26 at 2–4, ¶¶ 26–27, 56–58. The facts are sworn in declarations describing transactions that Defendants were free to test. *See* Doc. 26 ¶¶ 1–8 (pleading lack of knowledge). And the parties' interests remain adverse in every respect that matters: Plaintiffs want to take possession of firearms they have paid for, and Defendants stand ready to

prosecute the retailers who hand them over. That Defendants have now concluded they would rather not defend that regime in this Court does not mean they never opposed this suit; it means they lost the appetite to keep opposing it. *Cf. TranSouth Fin. Corp. v. Johnson*, 931 F.2d 1505, 1507–08 (11th Cir. 1991) (rejecting, over a dissent, the suggestion that a settlement structured to tee up a legal question for appeal was collusive, and describing that theory as "predicated upon speculation" about why a party chose the settlement terms it did). And the Supreme Court has since made clear, in *Evers*, that a plaintiff's purpose in bringing a case is "not significant" so long as the injury is real. 358 U.S. at 204.

Finally, to the extent the order suggests that this litigation "appears contrived, collusive, or otherwise not actually adversarial" because the parties now "request a summary adjudication" of a contested question, Doc. 47 at 4, that concern misapprehends what Defendants have done. Defendants have not briefed the Second Amendment question or asked the Court to decide it. They have made a Rule 68 offer—one that by its own terms "is not to be construed as an admission that Defendants are liable," Doc. 45-1 § 5—which is a litigation decision that a defendant makes when it concludes that the expected cost of continued defense, including fee exposure under § 1988, exceeds the expected benefit. The Eleventh Circuit has said that a government litigant's "salutary admission of error, far from warranting condemnation, should be emulated by all litigants who discover that a position they

have advocated lacks merit." *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1540 n.* (11th Cir. 1990). That is precisely what happened here.[6]

## II. Rule 68 and settled consent-judgment law contemplate exactly the judgment the parties have requested.

The Court's order also observes that the docket contains no motion to dismiss, no motion for summary judgment, and no merits briefing. Doc. 47 at 3. That is true; it is the consequence—and intended feature—of a Rule 68 settlement. Nothing about that absence bears on the Court's jurisdiction.

### *A. An accepted Rule 68 offer is self-executing.*

Rule 68 provides that once an offer is accepted and the offer, acceptance, and proof of service are filed, "[t]he clerk must then enter judgment." Fed. R. Civ. P. 68(a). Each of those papers is on file. Doc. 45 (acceptance and proof of service); Doc. 45-1 (offer). The courts of appeal uniformly read Rule 68's language as leaving no room for judicial discretion. The Eleventh Circuit has described the clerk's entry of a Rule 68 judgment as a "ministerial act." *Collar v. Abalux, Inc.*, 895 F.3d 1272, 1283 (11th Cir. 2018). The Sixth Circuit, in a case in which state and county officials

---

[6]Plaintiffs also cannot refrain from noting the practical consequence of dismissal. Defendants have said, in an offer signed by the Attorney General and the Solicitor General, that the Attorney General "has concluded that the Waiting Period Provisions violate the Second Amendment" and that every Defendant consents to statewide declaratory and injunctive relief. Doc. 45-1 § 2, at 5. Dismissal would leave the provisions in force and Plaintiffs subject to them, with no path to a judgment other than filing the same suit again against the same defendants, who would presumably make the same offer. The case-or-controversy requirement exists to preserve the judicial function, not to withhold relief from litigants whose opponents have conceded.

accepted liability under the Voting Rights Act by Rule 68 offer, held that the Rule "leaves no discretion in the district court to do anything but enter judgment once an offer has been accepted," and that "[u]nlike imposed judgments and ordinary consent judgments, once the parties agree on the terms of a Rule 68 judgment, the court has no discretion to withhold its entry or otherwise to frustrate the agreement." *Mallory v. Eyrich*, 922 F.2d 1273, 1279–80 (6th Cir. 1991). *Accord Ramming v. Nat. Gas Pipeline Co. of Am.*, 390 F.3d 366, 370–71 (5th Cir. 2004) ("The court generally has no discretion whether or not to enter the judgment. A Rule 68 Offer of Judgment is usually considered self-executing.").

*Mallory* is instructive because the defendants there were public officials who, like Defendants here, made a Rule 68 offer rather than litigate a federal claim to judgment. When those officials later had second thoughts and moved to set the Rule 68 judgment aside so that the merits could be adjudicated on a full record, the district court obliged; the Sixth Circuit reversed and reinstated the judgment, holding that a desire to litigate the merits is not an "exceptional or extraordinary circumstance" that permits a court to disturb a Rule 68 judgment once the parties have agreed to its terms. 922 F.2d at 1279–80. If a Rule 68 judgment cannot be reopened on that ground, it should not be withheld on that ground either.

### *B. The judgment resolves only the parties' dispute and forecloses no one.*

The concern animating *Lord v. Veazie* and *Johnson* was that parties with a common interest would obtain a judgment binding, or prejudicing, absent third parties. 49 U.S. at 255; 319 U.S. at 304. The judgment here does no such thing. It merely binds Defendants in their official capacities, which is the ordinary effect of any judgment under *Ex parte Young*. It would not bind any other court, would not decide the constitutionality of any other State's firearms waiting period law, and would not carry precedential weight in the debate the Court describes. The circuit split between *Ortega* and *Beckwith v. Frey*, 171 F.4th 560 (1st Cir. 2026),[7] was produced by fully adversarial litigation and will be resolved the same way.[8] A judgment on consent in this case adds nothing to that debate and takes nothing from

[7] In *Beckwith*, the First Circuit Court of Appeals upheld Maine's 72-hour waiting period law holding "that laws regulating the purchase or acquisition of firearms do not target conduct covered by the Second Amendment's 'plain text.'" 171 F.4th at 568. But this holding appears to have been quickly abrogated by the Supreme Court's decision in *Wolford v. Lopez*, 609 U.S. 185 (2026). *Wolford* makes clear that if a "law place[s] *any* restrictions on either the 'keeping' (i.e., possession) or the 'bearing' (i.e., carrying) of arms," that law falls within the plain text of the Second Amendment. *Id.* at 195-96 (emphasis added and brackets omitted); *see also id.* at 231 (Jackson, J., dissenting) ("[T]he majority essentially directs courts to start by simply asking whether a gun owner cannot do what she wants with her firearm."). Moreover, *Beckwith* also contradicts recent Eleventh Circuit precedent established in *Nat'l Rifle Ass'n v. Bondi*, 133 F.4th 1108 (11th Cir. 2025) (en banc); *see id.* at 1171 (Brasher, J., dissenting) ("Under the Supreme Court's Second Amendment jurisprudence, we must first ask whether the prohibited conduct is encompassed by the text. In this case,… we must decide whether the right to keep and bear arms extends to the purchase of firearms. Neither the Commissioner of Florida's Department of Law Enforcement nor the majority opinion disputes that this first step is met in favor of the plaintiffs. Therefore, a presumption arises that Florida's ban is unconstitutional.").

[8] A petition for certiorari is currently pending in *Beckwith v. Frey*, 171 F.4th 560 (1st Cir. 2026), petition for cert. filed, No. 26-258 (U.S. Aug. 25, 2026).

it. It simply ends this dispute between these parties on terms the Defendants proposed.

## CONCLUSION

Plaintiffs were subjected to the waiting period before this suit, have been subjected to it during this suit, and will be subjected to it the next time any of them buys a firearm unless the Court enters judgment. That is a case or controversy. For these reasons, the Court should decline to dismiss this action and should enter the final judgment requested in the parties' joint motion (Doc. 46).

DATED: September 23, 2026

Respectfully submitted,

*/s/ Michael D. McCoy*
Michael D. McCoy
**Mountain States Legal Foundation**
2596 South Lewis Way
Lakewood, Colorado 80227
Phone: (303) 292-2021
Email: mmccoy@mslegal.org

Matthew M. Larosiere
6964 Houlton Cir.
Lake Worth, FL 33467
Phone: (561) 452-7575
Email: larosieremm@gmail.com

Joseph G.S. Greenlee
**NRA – Institute for Legislative Action**
11250 Waples Mill Road
Fairfax, VA 22030
Phone: (703) 267-1161
Email: jgreenlee@nrahq.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


*/s/ Michael D. McCoy*
Michael D. McCoy
**Mountain States Legal Foundation**
2596 South Lewis Way
Lakewood, Colorado 80227
Phone: (303) 292-2021
Email: mmccoy@mslegal.org